UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HOOVER INVESTMENTS, INC., a
Delaware corporation,

        Plaintiff,

   v.

THE CITY OF CHARLOTTE, a
Michigan municipal corporation,

        Defendant.

_____/

Case No. 1:04-CV-689

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Hoover Investments, Inc.'s Motion for Declaratory Judgment pursuant to 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57. The Court has reviewed the filings and finds oral argument unnecessary. W.D. MICH. LCIVR 7.2(d).

**I.     BACKGROUND**

On July 27, 1999, Plaintiff and Defendant entered into an Agreement for the sale and purchase of approximately 19 acres of real property ("Property") then owned by Plaintiff and located in the City of Charlotte. The Property included a number of former "lagoon areas" or "cells" which had been used in years past for the disposal of industrial waste prior to 1975. Plaintiff conveyed the Property to Defendant for $100; however, as further consideration for the sale, Defendant also agreed to remedy at its own cost any environmental hazards resulting from the Property's prior use.[1]

---

[1] The Agreement contained two sections that worked to achieve this result. The first section indicated that:

> The City, at the City's sole cost, expense and control, within three years from the date of this Agreement, will Secure the Equalization Cell in accordance with all applicable local, state, federal laws, regulations and legislation. The City will also

Defendant planned to use the Property as a City park, and at Defendant's request, the Michigan Department of Environmental Quality ("MDEQ") removed the remnants of hazardous wastes. MDEQ spent approximately 1.2 million dollars cleaning up the Property and subsequently invoiced Plaintiff that amount. Thereafter, Plaintiff sued Defendant alleging the following four counts: breach of contract; promissory estoppel; unjust enrichment; and declaratory judgment. Plaintiff moved for summary judgment on its breach of contract claim, which the Court granted on April 26, 2005; however, the Court reserved a final damage calculation for trial. Plaintiff's current Motion seeks a judicial declaration that Plaintiff has been harmed or will be harmed by Defendant's breach of the Agreement and that Defendant is primarily liable for those injuries. After Plaintiff filed its Motion with the Court, MDEQ withdrew its demand that Plaintiff reimburse it for costs incurred at the Property, but reserved the right to reinstate that demand.

## II.   CONTROLLING STANDARDS

Title 28 of the United States Code, section 2201, provides this Court with the authority "[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration . . . ." Although the issue of a declaratory judgment

---

> be responsible for any environmental compliance of any other parcel within or upon the premises, subject to State and Federal laws and restrictions.

The other section provided that:

> The City agrees that no buildings, structures, or other permanent construction shall be placed on any part of the Property that is currently identified a "Cell" on the attached drawing, unless determined to be physically environmentally suited to such use by a licensed professional engineer. Such restriction will be made a permanent part of the deed registration.

(Pl.'s Compl., Ex. 9). Defendant considers this to be an indemnity agreement.

resides squarely within the discretion of this Court, the Sixth Circuit Court of Appeals instructs that a trial court should consider:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004) (citations omitted). It is with these principles in mind that the Court considers Plaintiff's Motion.

## III. DISCUSSION

Defendant opposes Plaintiff's Motion on the singular ground that no case or controversy remains since MDEQ no longer seeks reimbursement from Plaintiff, *see* U.S. CONST. Art III, § 2, and specifically contends that this case is no longer ripe for adjudication.[2]

"The ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985). Despite its obvious posturing, it is undisputed that MDEQ has not initiated any proceedings to enforce its claim against Plaintiff. When a plaintiff seeks a declaratory

---

[2] Plaintiff invites the Court to consider Defendant's challenge under the mootness doctrine. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack*, 395 U.S. 486, 496 (1969), whereas "[t]he ripeness inquiry arises most clearly when litigants seek to [prevent] the enforcement of statutes, regulations, or policies that have not yet been enforced against them." *Ammex Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). The Court finds that Defendant's opposition is properly grounded in the ripeness doctrine since MDEQ has threatened to seek reimbursement but has yet to initiate any proceedings to do so.

judgment, the case is deemed ripe for pre-enforcement review "only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) and *Armstrong World Indus. v. Adams*, 961 F.2d 405, 412 (3rd Cir. 1992)). When making this immediacy determination, the Court observes that several factors deserve consideration. First, the Court must consider the "likelihood that the harm alleged by plaintiffs will ever come to pass." *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995) (quoting *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988)). Next, the Court must determine "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." *Id.* And finally, the Court must assess "the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Id.*

As for the first *Adult Video* factor, the Court finds although it is possible that MDEQ may reinstate its claim against Plaintiff, that likelihood is remote given the Court's previous finding that Defendant is in breach of contract and the indemnity provisions fully enforceable. A possible harm premised on the happening of "contingent future events that may not occur as anticipated, or indeed may not occur at all," is unripe for review.[3] *Adult Video*, 71 F.3d at 568 (quoting *Thomas v. Union*

---

[3] The thrust of Plaintiff's argument and cited case law attempts to analogize this case to cessation cases, where the harming party creates a harm but voluntary abandons its activity to frustrate judicial intervention. *See, e.g., Friends of the Earth Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167 (2000). That line of precedent is inapposite to this case because MDEQ has yet to create any harm to Plaintiff. Thus, MDEQ's abandonment of its claim against Plaintiff is not a voluntary cessation because is has to begin causing harm before it can cease causing it.

*Carbide Agric. Products Co.*, 473 U.S. 568, 580-81 (1985)). Consequently, this factors tips against Plaintiff.

Concerning the second *Adult Video* factor, the Court observes that the most crucial factual development—MDEQ initiating legal proceedings to recover from Plaintiff—has yet to occur. While this factor largely overlaps with the first *Adult Video* factor, it also counsels against finding this controversy ripe for review. Facts necessary to determine the extent of Plaintiff's liability (and to the same extent Defendant's derivative liability) simply do not exist until MDEQ files a complaint against Plaintiff.

With regard to the final *Adult Video* factor, the Court finds that—although neither party has presented a particularly compelling argument on this point—this factor also favors judicial restraint. Plaintiff believes that the specter of suit by MDEQ negatively impacts its corporate net worth. This assertion fails under scrutiny. As Plaintiff correctly points out, "[i]ts net worth is determined based upon [sic] its assets and liabilities." (Pl.'s Reply Br. in Supp. of Mot. for Decl. J. at 8). However, net worth is not determined by a remote contingency. *See Kuhns v. Bd. of Governors of Fed. Reserve Sys.*, 930 F.2d 39, 41 (D.C. Cir. 1991) (in determining net worth a contingent liability that is remote is not considered when calculating net worth under the Generally Accepted Accounting Principals). As indicated, the Court considers the likelihood MDEQ will sue Plaintiff is remote, and thus, it cannot show a sufficient hardship under the *Adult Video* factors. This is particularly true in light of the Court's reluctance and lack of authority to render a decision in a largely speculative dispute. *See Golden v. Zwickler*, 394 U.S. 103 (1969).

Upon review, the Court finds that this case is not ripe for review as no actual case or controversy exists within the meaning of Article III, section 2 of the United States Constitution.

Accordingly, the Court does not have jurisdiction to decide Plaintiff's Motion at this time under 28 U.S.C. § 2201. Should facts warranting review ultimately develop, the Court would certainly invite a renewed motion at that juncture.

### IV.    CONCLUSION

Therefore, the Court will deny Plaintiff Hoover Investments, Inc.'s Motion for Declaratory Judgment. An Order consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>    December 2, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |