UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HOOVER INVESTMENTS, INC., a
Delaware corporation,

        Plaintiff,

   v.

THE CITY OF CHARLOTTE, a
Michigan municipal corporation,

        Defendant.

_____/

Case No. 1:04-CV-689

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court on Defendant City of Charlotte's Motion to Dismiss. Also before the Court is Plaintiff Hoover Investments, Inc.'s Motion to Stay these proceedings. The motions have been fully briefed (including a round of supplemental briefing) and the Court will dispense with oral argument. W.D. MICH. LCIVR 7.2(d). A complete rendition of the factual background in this case can be had by review of the Court's April 26, 2005 and December 2, 2005 Opinions. Relevant to today's discussion is the following.

    The dispute in this diversity action concerns a parcel of real property ("Property") that Plaintiff sold to Defendant. The parties memorialized the terms of that sale in a written Agreement. Since the Property had been previously used for the disposal of industrial waste, and in consideration for the sale (the purchase price was $100 in light of the environmental hazard), the Agreement contained the following two provisions:

> The City, at the City's sole cost, expense and control, within three years from the date of this Agreement, will Secure the Equalization Cell in accordance with all applicable local, state, federal laws, regulations and legislation. The City will also be responsible for any environmental compliance of any other parcel within or upon the premises, subject to State and Federal laws and restrictions.

\* \* \*

> The City agrees that no buildings, structures, or other permanent construction shall be placed on any part of the Property that is currently identified a "Cell" on the attached drawing, unless determined to be physically environmentally suited to such use by a licensed professional engineer. Such restriction will be made a permanent part of the deed registration.

(Pl.'s Compl., Ex. 9).

After completing the sale, Defendant requested the Michigan Department of Environmental Quality ("MDEQ") to environmentally remediate the Property. The MDEQ accepted Defendant's request and remediated the Property at the cost of 1.2 million dollars. The MDEQ then invoiced Plaintiff the 1.2 million dollars it spent for the environmental clean up costs.

Plaintiff sued Defendant alleging Defendant breached the Agreement. The Court agreed and granted Plaintiff summary judgment on its breach of contract claim, but reserved a final damage calculation for a later date. Plaintiff then moved the Court to declare that it was harmed, or soon would be harmed, by Defendant's breach of the Agreement. After Plaintiff made its declaratory request, the MDEQ withdrew its demand that Plaintiff reimburse it for costs incurred in remediating the Property. The MDEQ did so by a September 9, 2005 letter, which reads in pertinent part:

> This letter is intended to put forth the current position of the [MDEQ] regarding the liability status of . . . Hoover Investments, Inc. for the A.E. Hoover property (Property) in Charlotte. . . . [T]he Remediate and Redevelopment Division (RRD) of the MDEQ and the Michigan Department of Attorney General (MDAG) ha[ve] recently concluded a detailed examination of the new information regarding this site not previously examined by the RRD and the MDAG. Based on this examination, the MDEQ and the MDAG have concluded that this new information no longer supports the position that Hoover Investments, Inc. . . . [is] liable . . . for contamination . . . at the Property. Therefore, the [M]DEQ is formally retracting its November 12, 2003, letter to A.E. Hoover including its previous determination that Hoover Investments, Inc . . . [is] liable . . . for the contamination . . . . The MDEQ's position is subject to change if additional information becomes available in the future that documents that Hoover Investments, Inc. [is] liable . . . .

(Def.'s Resp. to Pl.'s Mot. for Decl. Judg., Ex. A). The Court ultimately found Plaintiff's request for declaratory relief unripe for review and accordingly declined Plaintiff's invitation to declare it was injured by Defendant's breach of the Agreement.

As noted, this Court has already determined that Defendant breached the Agreement but reserved a damage calculation for a later date. In light of the parties' motions and the course this litigation has taken, the Court now deems it prudent to ascertain Plaintiff's damages resulting from Defendant's breach and issue a Judgment in this case.

"The remedy for breach of contract is to place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v. Huron Castings Inc.*, 544 N.W.2d 278, 280 (Mich. 1996). Ordinarily, compensatory damages recoverable for breach of contract are the losses sustained or the gains negated that arise naturally from the breach or were contemplated by the parties at contract formation. *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 52-53 (Mich. 1980) (citing *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854) and 5 CORBIN ON CONTRACTS § 1007). Since there are presently no demands against Plaintiff from the MDEQ, Plaintiff has suffered no loss nor been prevented from any gain by Defendant's breach. Given such, Plaintiff is not entitled to an award of compensatory damages. *See Id.*; RESTATEMENT OF CONTRACTS § 329. However, "[w]here a right of action for breach exists, but no harm was caused by the breach . . . judgment will be given for nominal damages, a small sum fixed without regard to the amount of harm." RESTATEMENT OF CONTRACTS § 328; *Litvin v. Joyce*, 44 N.W.2d 867, 869 (Mich. 1950). Therefore, because

Defendant breached its obligations under the Agreement, the Court believes Plaintiff is entitled to an award of nominal damages in the amount of $1.[1]

In addition to breach of contract, Plaintiff's Complaint also alleges three additional counts: promissory estoppel, unjust enrichment, and its previously considered request for a declaratory judgment. Concerning Plaintiff's request for a declaratory judgment, the Court determined by its December 2, 2005 Opinion and Order that the facts surrounding Plaintiff's request were unripe for adjudication. The Court invited Plaintiff to renew its request for a declaratory judgment should the requisite factual predicate arise (*i.e.*, a MDEQ demand). At this time, no such demand has been made and the Court is doubtful one will ever be made. Consequently, the Court finds it wise to dismiss this claim without prejudice.[2]

As for Plaintiff's promissory estoppel and unjust enrichment claims, the Court observes that these are equitable doctrines designed to imply a contract (or quasi-contract) when none exists under the formal principles of contract law. *Huhtala v. Travelers Ins. Co.*, 257 N.W.2d 640, 647 (Mich. 1977) (promissory estoppel substitutes for contractual consideration); *Nygard v. Nygard*, 401 N.W.2d 323, 327 (Mich. App. 1986) (if formal contract rules were not satisfied, court would then look to principles of equity). Thus, Plaintiff's claims in equity on the Agreement cannot coexist with

---

[1] Defendant's belief that the Court's December 2, 2005 Opinion and Order divests the Court of jurisdiction to further decide matters in this case is in error. The Court merely held that it was without jurisdiction to decide Plaintiff's request for declaratory relief. The Court surely has jurisdiction to calculate damages for a contractual liability already found.

[2] Contrary to Plaintiff's assertions—in light of the Court's determination that Defendant has breached the Agreement and Plaintiff is entitled to nominal damages—a declaratory judgment will do little to settle the controversy or clarify the parties' legal relations. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004). The Court has fashioned a remedy consistent with the facts before it and a declaratory judgment is simply unnecessary at this time. *Id.*

its claims at law because recovery on either equitable claim presupposes the absence of a contract. The Court has already determined that Plaintiff has established the existence of a contract; that Defendant breach the contract; and that it is entitled to nominal damages in the amount of $1. Thus, Plaintiff's promissory estoppel and unjust enrichment claims are unnecessary and will be dismissed with prejudice.[3]

A final point the Court wishes to make crystal clear is that today's disposition of Plaintiff's claims operates on the express assumption that the MDEQ has not, and will not, seek any remuneration from Plaintiff related to the Property's environmental hazards (either directly or indirectly through Plaintiff's obligation to indemnify third parties). Should that assumption change at any point in the future, the Court invites Plaintiff to move for relief from judgment under Federal Rule of Civil Procedure 60(b). If the MDEQ does seek payment from Plaintiff or a third party Plaintiff is obligated to indemnify, a Rule 60(b) motion would be well received and the Court would likely be inclined to revisit the issue of Plaintiff's damages. Thus, should a Rule 60(b) motion become necessary, any fears Plaintiff may have about making a proper showing of entitlement to relief—absent the unforeseeable—should hereby be laid to rest. As for the parties' pending motions, due to the dispositive nature of today's Opinion, each will denied as unnecessary. A Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:  
    April 18, 2006

/s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Furthermore, Plaintiff's damages for its promissory estoppel and unjust enrichment claims would be identical and duplicative to its breach of contract claim.